**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **ROGER PAYNE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | No. 3:11-CV-1672-D-BH |
| ) | |
| **UNIVERSAL RECOVERY, INC., et al,** ) | |
| ) | |
| **Defendants.** ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case has been referred for pretrial management. Before the Court is *Plaintiff's Motion to Hold Case in Abeyance*, filed August 19, 2011 (doc. 19), and *Defendants' 12(b)(6) Motion to Dismiss*, filed August 24, 2011 (doc. 21). Based on the relevant filings and applicable law, the motion to hold the case in abeyance should be **DENIED**, and the motion to dismiss should be **GRANTED in part** if Plaintiff does not file an amended complaint within the allotted time, or **DENIED as moot** if Plaintiff timely files an amended complaint .

**I. BACKGROUND**

On November 29, 2010, counsel for plaintiff Roger Payne (Plaintiff) filed Civil Action No. 3:10-CV-2411-D (*Payne I*) against Universal Recovery, Inc. (Universal), and Bradley J. Davis, claiming that they failed to pay Plaintiff minimum and overtime wages in violation of sections 6 and 7 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206-207. (doc. 1.) On December 16, 2010, counsel dismissed the action without prejudice under Fed. R. Civ. P. 41(a). (doc. 8.) On May 16, 2011, Plaintiff filed a *pro se* motion to reinstate the action, alleging that he had dismissed the action based upon representations from the defendants' employee, Becky Richardson, that she would write him a check for wages due him and that he would not be fired for initiating the action. (doc. 9.) He alleged that the defendants terminated him in retaliation for bringing the action on December 17,

2010, the day following his dismissal of the action. (*Id.*) He also alleged that Davis and his employees Richardson, Sabrina Miller, Jennifer Wright, and Angela "Doe" conspired to prevent him from receiving unemployment benefits by falsifying the reason for his termination. (*Id.*) The Court construed the motion to reinstate as a motion under Rule 60(b) and denied it. (doc. 15.) The Court explained that Plaintiff had failed to establish a right to relief under Rule 60(b), and had at most shown a basis to file a new lawsuit based on conduct occurring on or about December 17, 2010. (*Id.*) Plaintiff's appeal of the ruling to the Fifth Circuit Court of Appeals is now pending. (doc. 16.)

On July 14, 2011, Plaintiff filed this *pro se* action (*Payne II*) against Universal, Davis, Richardson, Miller, Wright, and Angela Orta (Defendants), alleging retaliatory termination under the FLSA, failure to pay minimum and overtimes wages in violation of sections 6 and 7 of the FLSA, and a conspiracy to violate his rights to equal protection of the laws and his right to unemployment benefits in violation of 42 U.S.C. §§ 1985(2)-(3) and 2000a-2. (doc. 2, pp. 1-5.) He alleges that he worked for Defendants from January 12, 2010, until December 17, 2010, as a "repo driver/caller." (*Id.* at 2.) While there, he allegedly worked a minimum of 60 hours per week for four weeks without getting paid and did not get paid for hours he worked from May 2010 to October 2010. (*Id.* at 2, 18.) He alleges that on December 15, 2010, after he filed *Payne I* in this Court, Richardson allegedly told him that, she would write him a check for his unpaid wages and he would not lose his job. (*Id.*) He dismissed the action on December 16, 2010, allegedly based on this conversation. (*Id.* at 2.) On December 17, 2010, however, Miller informed him that she had been instructed to fire him and escort him out of the property. (*Id.* at 2.) She also stated that she had $500 severance pay for him, "if and only if" he signed what she presented as a Hold Harmless agreement. (*Id.* at 2, 18.) He accepted the $500 and signed the Hold Harmless agreement, allegedly

2

under duress, and left the property. (*Id.* at 2.) The agreement[1] stated that Plaintiff released Universal, its employees, owners, and any related entities from "all liabilities" and agreed "to settle all actions and causes of actions against each other present and future known and unknown." (*Id.* at 8.) It also stated that if either party instituted any legal proceeding against the other, the party covenanted to have it dismissed at that party's own cost with express prejudice to bringing further proceedings against the other party arising out of the same matter. (*Id.*) The agreement stated that Plaintiff had received $500 gross severance pay in cash to settle and resolve the matter. (*Id.*)

Plaintiff alleges that around December 17, 2010, he applied for unemployment benefits from the Texas Workforce Commission (TWC). (*Id.* at 2, 18.) Defendants then allegedly attempted to deprive him of those benefits by sending several false statements to the TWC. (*Id.* at 2, 18-19.) The statements, attached to Plaintiff's complaint, assert among other things, that he was fired for not getting any cars, showing up late for work and for required meetings, working on other people's assignments instead of his own, making and receiving personal calls at work, and making personal use of the internet at work. (*Id.* at 10-16.) Plaintiff alleges that the TWC found these statements not credible and awarded him unemployment benefits. (*Id.* at 2, 19.) TWC's Wage and Hour Division also allegedly concluded that Defendants had violated the provisions of the Texas Payday Law when they failed to pay his earned wages. (*Id.* at 19.)

Plaintiff now moves to stay this action pending the disposition of the appeal of his first case. (doc. 19.) Defendants oppose the stay (doc. 24) and move to dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (doc. 21). The motions are now ripe for consideration.

---

[1] The Hold Harmless Agreement is attached to Plaintiff's complaint.

## II. MOTION TO STAY

Plaintiff moves to stay this action pending the disposition of his appeal to the Fifth Circuit. (Mot. Br. at 1-2.) He argues that it would be in the interest of judicial economy to defer any decision that might be made in *Payne II* until the Fifth Circuit reaches a decision on the merits of his appeal in *Payne I*. (*Id.* at 2.) He asserts that as a practical matter, his allegations of unfair labor practices should go forward as one civil action, especially since the allegations evolve from one continuous incident involving the same parties. (*Id.*) Defendants respond that Plaintiff has failed to state a claim and there is no substantive reason to abate this suit while he pursues his appeal. (Resp. at 2.)

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d § 2901*, Vol. 11, p. 491 (West 1995) ("Stays prior to judgement, to await a decision in another forum, or for some other purpose . . . are left to the inherent power of the court"). While the district court possesses the authority to regulate its flow of cases, this authority is largely unreviewable and must not be abused. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). "Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Coastal*, 761 F.2d at 204 n.6. "Generally, the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly." *Id.*

Here, Plaintiff essentially argues that it is in the interest of judicial economy to stay *Payne II* until the Fifth Circuit reinstates *Payne I* and to then consolidate it with *Payne II* for decision.

4

Aside from his general assertion of judicial economy, however, Plaintiff has failed to show a genuine necessity for the proposed stay. A discretionary stay of the proceedings should be denied.

### III.  MOTION TO DISMISS

Defendants move to dismiss Plaintiff's FLSA and conspiracy claims under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. (Mot. Br. at 1-2.) They argue that Plaintiff has failed to make sufficient factual allegations to support the claims and has failed to allege facts to support his contention that the Hold Harmless Agreement is not a valid release of his claims against them. (*Id.* at 3-5.)

**A.  12(b)(6) Standard**

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The

alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

### A. FLSA Claims

Defendants move for dismissal of Plaintiff's FLSA claims on three grounds: (1) the factual allegations are insufficient to show that the FLSA is applicable to them, (2) the factual allegations are insufficient to support employer status of the individual defendants; and (3) there are no factual allegations of misconduct to support Plaintiff's claim of retaliatory termination. (Mot. Br. at 3-4.)

#### 1. **Applicability of FLSA**

Defendants first argue that Plaintiff has failed to plead facts regarding the applicability of the FLSA to them since he makes only a conclusory allegation that Defendants are involved in interstate commerce. (Mor. Br. at 3-4.) Both the minimum wage and overtime provisions of the FLSA are limited in application, by their own terms, to employees engaged in commerce or the production of goods for commerce (individual coverage), or employed in an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage). *See id.*; *Martin v.*

*Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).[2]  "Either individual or enterprise coverage is enough to invoke FLSA protection." *See Martin*, 955F.2d at 1032 (emphasis omitted).

      *a. Individual Coverage*

To sufficiently plead individual coverage, Plaintiff must allege facts giving rise to a reasonable inference that he was engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. §§ 206(a), 207(a); *Morrow v. J W Electric, Inc.*, 2011 WL 5599051, at *3 (N.D. Tex. Nov. 16, 2011). The test for determining whether an employee is engaged in commerce is "whether the work is so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)). "Work that is purely local in nature does not meet the FLSA's requirements, but 'any regular contact with commerce, no matter how small, will result in coverage.'" *Id.*

Plaintiff alleges that he that he worked for Defendants as a "repo/driver caller" and that he was "individually engaged in commerce as an employee." (doc. 2, p. 2.) The exhibits attached to his complaint describe his work as repossessing cars for several years and making calls on his accounts while working in the field. (*See id.* at 11, 14, 15.) While the complaint and the attached exhibits describe the nature of his work, they do not contain any facts showing that he was engaged in interstate commerce. Plaintiff has therefore failed to sufficiently plead individual coverage under the FLSA. *See Morrow*, 2011 WL 5599051, at *3 (plaintiff's allegation that he provided electrician

---

[2]"Commerce" for purposes of the FLSA "means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C § 203(b). In other words, it means interstate commerce. *Morrow v. J W Electric, Inc.*, 2011 WL 5599051, at *2 n.2 (N.D. Tex. Nov. 16, 2011).

7

services to defendants' clients sufficiently described his work but did not show how that work engaged him in interstate commerce).

### b. *Enterprise Coverage*

To sufficiently plead enterprise coverage, Plaintiff must allege facts giving rise to at least a reasonable inference that Universal is an "enterprise engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. §§ 206(a), 207(a). The FLSA defines an "enterprise engaged in commerce" as "an enterprise that . . . has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]" *See* 29 U.S.C. § 203(s)(1).

Plaintiff makes only conclusory allegations that at all times pertinent to his complaint, Universal "was an enterprise engaged in interstate commerce," and that "Defendants regularly owned and operated businesses engaged in commerce or in the production of goods for commerce as defined by [FLSA]." (doc. 2, p. 2.) His averments are nothing more than "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. In the absence of any facts to support these conclusory allegations, Plaintiff has failed to sufficiently plead enterprise coverage. His FLSA claims under sections 6 and 7 of the FLSA are therefore subject to dismissal under Rule 12(b)(6). *See Morrow*, 2011 WL 5599051, at *3 (granting 12(b)(6) motion to dismiss in the face of similar conclusory allegations related to enterprise coverage).

### 2. **Employer Status**

Defendants move to dismiss all of the FLSA claims against Richardson, Davis, Miller, Orta,

8

and Wright on the ground that Plaintiff has failed to plead employer status for these defendants. (Mot. Br. at 3.)  It is well-established that in order to be bound by the requirements of the FLSA, one must be an "employer." *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206-07); *Mendoza v. Essential Quality Const., Inc.*, 691 F.Supp.2d 680, 684 (E.D. La. 2010 (there must be an employer-employee relationship to establish a claim for retaliation or failure to compensate under the FLSA).  The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA's definition of employer "is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).  Under this definition, an individual qualifies as an employer "if he independently exercise[s] control over the work situation." *Donovan*, 747 F.2d at 972.

"The FLSA's definition of "employer" contemplates the possibility of multiple employers", i.e. an "individual may be the employee of two or more employers at the same time." *Itzep v. Target Corp.*, 543 F.Supp.2d 646, 652 (W.D. Tex. 2008).  In order to determine whether an individual constitutes an employer under the FLSA, courts employ an economic reality test that considers the following four factors: (1) whether the individual has the power to hire and fire the employee; (2) whether he supervised and controlled the employee's work schedule or conditions of employment; (3) whether he determined the rate and method of payment for the hours worked; and (4) whether he maintained employment records. *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir.1990)).  An individual deemed an employer under

FLSA "may be held jointly and severally liable for damages resulting from the failure to comply with FLSA." *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) (citing *Donovan*, 747 F.2d at 966).

Plaintiff alleges that defendant Davis acted directly or indirectly in the interest of Universal at all relevant times and was substantially in control of the terms and conditions of Plaintiff's work. (doc. 2, p. 1.) He also alleges that Richardson, Miller, Wright, and Orta similarly acted directly or indirectly in the interest of Universal in relation to his employment and retaliatory termination. (*Id.*) He claims that Richardson told him on December 15, 2010, that a lawsuit would not be necessary because she would cut him a check for the unpaid wages and that he would not be fired if he dismissed his lawsuit. (*Id.* at 2.) He also avers that Miller told him that she had been instructed to fire him and escort him off the property and that she had severance pay for him if he signed the Hold Harmless agreement. (*Id.*) The exhibits attached to Plaintiff's complaint describe Miller as his supervisor and state that she made the decision to terminate his employment. (*Id.* at 10-13.)

These allegations are sufficient to provide grounds for entitlement to relief against Miller and Richardson, but not against Davis, Orta, and Wright. While the economic reality test is necessarily a fact-specific inquiry typically applied in the summary judgment context, Plaintiff's complaint must contain some factual allegations giving rise to a reasonable inference that Davis, Orta, and Wright are Plaintiff's employers under the FLSA. Since the complaint is devoid of such allegations, Plaintiff's complaint fails to state FLSA claims against Davis, Orta, and Wright.

### 3. Retaliatory Termination

Defendants next move to dismiss Plaintiff's retaliatory termination claim under the FLSA, arguing that he has failed to allege specific instances of misconduct. (Mot. Br. at 4.) "The FLSA

makes it unlawful for anyone to 'discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA.'" *Johnson v. Manpower Prof'l Servs.*, 2011 WL 4584757, at *5 (5th Cir. Oct. 5, 2011) (quoting 29 U.S.C. § 215(a)(3)). In order to establish a *prima facie* case of retaliation under the FLSA, a plaintiff must plead: "(1) participation in statutorily protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *See Hagan v. Echostar Satellite L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

Here, Plaintiff filed *Payne I*, alleging FLSA violations by Universal and Davis, on November 29, 2010. (doc. 2, p. 2.) He claims that on December 15, 2010, Richardson falsely represented that if he dismissed *Payne I*, she would write him a check for his unpaid wages and he would not lose his job. (*Id.*) He dismissed the action the next day based on this conversation and was terminated the following day. (*Id.*) This sequence of events, as alleged in the complaint, is sufficient to state a facially plausible claim for relief. The issue at the motion to dismiss stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claims." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiff's retaliatory termination claim against Universal, Richardson, and Miller is therefore not subject to dismissal for failure to state a claim.

### 4. Hold Harmless Agreement

Defendants contend that the Hold Harmless Agreement, attached to Plaintiff's complaint, should act to dismiss all of his existing and potential claims against Defendants, including his FLSA and conspiracy claims, because Plaintiff has not pled sufficient factual allegations to support any claim that the agreement is invalid. Plaintiff has pled, however, that he signed the agreement under

11

duress on the day following his dismissal of his claims and after Miller told him that he would get the severance pay "if and only if" he signed the Hold Harmless Agreement. (Doc. 2. p. 2.) These allegations are sufficient to avoid dismissal based on the Hold Harmless Agreement at this stage.

**B. Conspiracy Claims**

Defendants move to dismiss Plaintiff's conspiracy under 42 U.S.C § 1985(2), (3), and 2000a-2, on grounds that the statutes are civil rights-related laws and cannot be extended to alleged violations of the FLSA. (Mot. Br. at 5.) To the extent Plaintiff is alleging a civil conspiracy under Texas law, they argue that he has failed to allege an unlawful overt act and resulting damages. (*Id.*)[3]

**1. § 1985(3)**

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Subsection 3, claimed here, prohibits a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. 42 U.S.C. § 1985(3). "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994)). Additionally, the conspiracy must have a class or race-based animus. *See id.*; *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001).

---

[3] Defendant's argument that the Hold Harmless Agreement bars Plaintiff's pending or potential claims, including the FLSA and conspiracy claims, has been addressed already and need not be addressed again.

Here, Plaintiff alleges that Defendants conspired to deprive him of his unemployment benefits, but fails to allege that the conspiracy was motivated by class or race-based animus. His conspiracy claim under § 1985(3) is therefore subject to dismissal for failure to state a claim.

**2. § 1985(2)**

Section 1985(2) contains the following two clauses:

> Obstructing justice; intimidating party, witness, or juror – If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The first clause of §1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n.6 (5th Cir. 2010). The clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge*, 460 U.S. 719, 723–27 (1983). The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant*, 597 F.3d at 687. Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). *See Daigle v. Gulf State Utils. Co., Local*

13

*Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc), cert. denied, 454 U.S. 1110 (1981)).

Here, Plaintiff has failed to state a claim under the first clause of § 1985(2). His complaint does not plausibly allege that Defendants conspired to deter him from attending court or testifying, or to punish him for attending court or testifying, or to injure him as a juror, and is more akin to a retaliation claim for "filing" a case in federal court. Plaintiff has also failed to state a claim under the second clause of § 1985(2). As discussed, he has failed to allege facts showing that the alleged conspiracy was motivated by race or class-based animus. In short, his §1985(2) claim against the defendants is also subject to dismissal for failure to state a claim.

   **3. § 2000a-2**

Section 2000a-2 prohibits "deprivation of, interference with, and punishment for exercising rights and privileges secured by section 2000a or 2000a-1 of [Title 42]." 42 U.S.C. § 2000a-2. Section 2000a in turn prohibits discrimination or segregation in public places on the ground of race, color, religion, or national origin. *Id.* § 2000a. Similarly, § 2000a-1 prohibits discrimination or segregation at "any establishment or place" based on "race, color, or national origin, if such discrimination or segregation is or purports to be required by any law, statute, ordinance, regulation, rule or order of a State or State agency." *Id.* § 2000a-1.

Even liberally construed, Plaintiff's complaint does not contain allegations that Defendants conspired to deprive, interfere with, or punish him for exercising his rights and privileges under sections 2000a and 2000a-1. It simply alleges that Defendants conspired to deprive him of his right to unemployment benefits and does not provide the reasons for doing so. Plaintiff's conspiracy claim under § 2000a-2 is therefore subject to dismissal for failure to state a claim.

14

**4. State Law**

Under Texas law, civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citations omitted).

At issue here is whether Plaintiff has sufficiently pled an unlawful overt act and damages as the proximate result. Plaintiff only expressly alleges that Defendants submitted false statements to the TWC in an attempt to prevent him from receiving unemployment benefits, and this allegation sufficiently pleads an overt act. (doc. 2, pp. 3, 10-16, 18-19.) He has failed, however, to allege that he suffered damages as a result. In fact, he states in his complaint that the TWC did not find Defendants' statements credible and granted his request for unemployment benefits. (*Id.* at 3, 19.) Accordingly, his civil conspiracy claim under Texas law is also subject to dismissal for failure to state a claim.[4]

### IV. OPPORTUNITY TO AMEND

Notwithstanding Plaintiff's failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D.Tex. Feb.13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court order, *see Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001

---

[4]Even if Plaintiff's conspiracy claim is liberally construed as including the other allegations in his complaint, the result is the same.

WL 627600, at *2, or when a *pro se* plaintiff seeks to amend his complaint in response to a recommended dismissal, *see Swanson v. Aegis Commc'ns Group, Inc.*, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff has not amended his complaint since filing this lawsuit, and it does not appear that he has pled his best case to the court. He should therefore be accorded an opportunity to amend his complaint to sufficiently state the claims subject to dismissal.

## V. RECOMMENDATION

Plaintiff's motion to stay should be **DENIED**. If Plaintiff does not file an amended complaint within the 14 days for objections to this recommendation, Defendants' motion to dismiss should be **GRANTED in part,** and his conspiracy and failure to compensate claims under the FLSA against all defendants, and his retaliatory termination claim under the FLSA against defendants Davis, Wright, and Orta only, should be dismissed with prejudice. If Plaintiff timely files an amended complaint, Defendant's motion to dismiss should be as **DENIED as moot**. The retaliatory termination claim under the FLSA should be allowed to proceed against defendants Universal, Miller, and Richardson in any case.

**SO RECOMMENDED on this 7th day of December, 2011.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE